UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

BETTY HANSEN,
Petitioner,
v.
TINA HORNBEAK,
Respondent.

1:08-CV-01697 LJO JMD HC

FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS

THIRTY DAY DEADLINE

Betty Hansen ("Petitioner") is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL HISTORY**

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation pursuant to a conviction in September 1988 for first degree attempted murder with a firearm sentence enhancement. (Pet. at 2). The instant petition does not challenge her conviction; rather, Petitioner contends that the California Board of Parole Hearings (the "Board"), whom she appeared before on June 6, 2007 for a parole consideration hearing, violated her constitutional rights by denying her parole . (Pet. at 5).

Petitioner subsequently filed a petition for writ of habeas corpus with the Madera County Superior Court challenging the Board's denial of parole. (*See* Answer Ex. 1). The Madera County Superior Court transferred the case to the Kern County Superior Court, which issued a reasoned opinion rejecting Petitioner's claims. (*See* Answer Exs. 2, 3).

Petitioner also filed petitions for writ of habeas corpus with the California Court of Appeal and the California Supreme Court. (Answer Exs. 4, 6). The California Court of Appeal and Supreme Court summarily denied the petitions. (*See* Answer Ex. 5, 7).

On October 22, 2008, Petitioner filed the instant federal petition for writ of habeas corpus.

Respondent filed a response to the petition on March 17, 2009. Respondent admits that Petitioner has exhausted her state remedies and does not allege that the instant petition is untimely. (Answer at 2).

Petitioner filed a reply to the Respondent's answer on April 3, 2009.

## FACTUAL BACKGROUND

The facts of the commitment offense were considered by the Board in determining whether Petitioner was suitable for parol and are thus relevant to the Court's inquiry into whether the State court's decision upholding the Board's decision was objectively unreasonable. *See* Cal. Code Regs., tit. 15, § 2402(c)(1). In its decision, the Board set forth the version of events that they believed was more credible, stating:

> [Petitioner] had been married to Clifton Hansen approximately two years and [Petitioner] lived at 300 Burnetta Avenue in Bakersfield. [Petitioner] had access to a pistol [Petitioner's] husband had bought for [Petitioner]. Approximately two weeks prior, Clifton had told [Petitioner] that he planned to divorce [Petitioner]. On August 13th of 1987...the victim was particularly vulnerable as he was asleep in the bed wearing only briefs, when [Petitioner] woke him saying, "Cliff, I need your help, we got prowlers," and disappeared. Knowing that [Petitioner] kept [her] pistol fully loaded on top of the speaker by the side of the bed, Cliff got out of bed, walked into the ktichen, looked out the window, not turning on any lights in the full moon. Walking outside about five to six feet, he saw the door to his number four shed was open. [Petitioner] was standing the doorway pointing a gun at him with [her] arms straight out...[Petitioner] held the gun straight out in front of [her] body at shoulder level about 12 to 15 feet away. [Petitioner] immediately shot him twice before he could react, the first bullet hitting his left shoulder, the second in his lower left part of his stomach. The victim grabbed his side and said, "Betty, you shot me," then he blacked out, hitting the ground. Next, the victim saw [Petitioner] walk within four to five feet and shoot him six more times emptying the weapon, turning and walking away. Despite his wounds, the victim walked back into the house, picked up a phone to dial 911.

(Pet. Ex. 1, Transcript of Parole Hearing, at 90-91). [1]

---

[1] While the Board does not explicitly state its source for these facts, the Court notes that the Board incorporated the facts as stated in the decision of California Court of Appeal on direct review. (Pet. Ex. 1 at 9). Therefore, the Court assumes that the facts as recited by the Board were derived from that source.

At the hearing, Petitioner presented a version of events in which the shooting was accidential. Petitioner stated that she heard prowlers in the backyard of the house. (Id. at 9). She tried to wake her husband and receiving no response from him, she took the gun and went outside. (Id. at 10). Petitioner contends that while in the yard, she heard noise behind her and shot the pistol several times at one man. (Id). She contends she saw another man go into her house and followed him in. (Id).

## **DISCUSSION**

### **I. Jurisdiction and Venue**

A person in custody pursuant to the judgment of a State court may petition a district court for relief by way of a writ of habeas corpus if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); *Williams v. Taylor*, 529 U.S. 362, 375 n.7 (2000). Petitioner asserts that she suffered violations of her constitutional rights stemming from the Board's denial of parole. Petitioner is currently incarcerated at Valley State Prison for Women, which is located in Kings County. (Pet. at 2). Her incarceration stems from a conviction in Kern County Superior Court. Kern and Kings County are within this judicial district. 28 U.S.C. § 84(b). Thus, the Court has jurisdiction over Petitioner's claims and is the proper venue for this action. *See* 28 U.S.C. § 2241(d) (stating the in a state possessing more than one judicial district, the district courts in which a prisoner is convicted and where a petitioner is currently incarcerated posses concurrent jurisdiction to hear a petition for writ of habeas corpus by the prisoner).

### **II. ADEPA Standard of Review**

All petitions for writ of habeas corpus filed after 1996 are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), enacted by Congress on April 24, 1996. *Lindh v. Murphy*, 521 U.S. 320, 326-327 (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied*, 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by Lindh*, 521 U.S. 320 (holding AEDPA only applicable to cases filed after statute's enactment)). The instant petition was filed in 2008 and is consequently governed by AEDPA's provisions. *Lockyer v. Andrade*, 538 U.S.

63, 70 (2003). While Petitioner does not challenge her underlying conviction, the fact that Petitioner's custody arises from a State court judgment renders Title 28 U.S.C. section 2254 the exclusive vehicle for Petitioner's habeas petition. *Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1126-1127 (9th Cir. 2006) (quoting *White v. Lambert*, 370 F.3d 1002, 1006 (9th Cir. 2004) in holding that § 2254 is the exclusive vehicle for a habeas petitioner in custody pursuant to a State court judgment even though he is challenging the denial of his parole).

Under AEDPA, a petition for habeas corpus "may be granted only if [Petitioner] demonstrates that the State court decision denying relief was 'contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.'" *Irons v. Carey*, 505 F.3d 846, 850 (9th Cir. 2007) (quoting 28 U.S.C. § 2254(d)(1)); *see also Lockyer*, 538 U.S. at 70-71. As a threshold matter, this Court must "first decide what constitutes 'clearly established federal law, as determined by the Supreme Court of the United States.'" *Lockyer*, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)). In ascertaining what is "clearly established federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id.* (quoting *Williams*, 592 U.S. at 412). "In other words, 'clearly established federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the State court renders its decision." *Id.*

Finally, this Court must consider whether the State court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law." *Lockyer*, 538 U.S. at 72, (quoting 28 U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the State court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the State court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413; *see also Lockyer*, 538 U.S. at 72. "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the State court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the

relevant State court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the State court's application of clearly established law was "objectively unreasonable." *Id.* at 409.

Petitioner bears the burden of establishing that the State court's decision is contrary to or involved an unreasonable application of United States Supreme Court precedent. *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a State court decision is objectively unreasonable. *See Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003); *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999).

AEDPA requires that a federal habeas court give considerable deference to State court's decisions. The State court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). Furthermore, a federal habeas court is bound by a State's interpretation of its own laws. *Souch v. Schaivo*, 289 F.3d 616, 621 (9th Cir. 2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

The initial step in applying AEDPA's standards is to "identify the state court decision that is appropriate for our review." *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005). Where more than one State court has adjudicated Petitioner's claims, a federal habeas court analyzes the last reasoned decision. *Id*. (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) for the presumption that later unexplained orders, upholding a judgment or rejecting the same claim, rests upon the same ground as the prior order). The Ninth Circuit has further stated that where it is undisputed that federal review is not barred by a State procedural ruling, "the question of which state court decision last 'explained' the reasons for judgement is therefore relevant only for purposes of determining whether the state court decision was 'contrary to' or an 'unreasonable application of' clearly established federal law." *Bailey v. Rae*, 339 F.3d 1107, 1112-1113 (9th Cir. 2003). Thus, a federal habeas court looks through ambiguous or unexplained State court decisions to the last reasoned decision in order to determine whether that decision was contrary to or an unreasonable application of clearly established federal law. *Id*. Here, the Kern County Superior Court, the California Court of

Appeal, and the California Supreme Court all adjudicated Petitioner's claims. (*See* Answer Exs. 3, 5, 7). As the California Court of Appeal and California Supreme Court issued summary denials of Petitioner's claims, the Court "look[s] through" those courts' decisions to the last reasoned decision; namely, that of the Kern County Superior Court. *See Ylst v. Nunnemaker*, 501 U.S. at 804.

**III. Review of Petitioner's Claim**

As noted earlier, the dispositive inquiry before this Court is whether the last reasoned decision by the State court was an unreasonable application of clearly established federal law. *See Williams*, 529 U.S. at 407-408 (explaining that where there is no factually on-point Supreme Court case, the State court's determination is subject to the unreasonable application clause of 28 U.S.C. § 2254). Petitioner contends that the Board's decision deprived her of due process of the law for a variety of reasons, including: the Board's denial of parole was not supported by some evidence outside of immutable factors, the regulations utilized by the Board to make its decision was unconstitutionally vague, and the Board's application of the regulations violated the separation of power doctrine.

***A. Denial of Parole Unsupported By Some Evidence***

Petitioner claims her right to due process of the law was violated as the Board's denial of parole was not supported by some evidence of her current dangerousness. In a related contention, Petitioner argues that the Board's reliance on immutable factors, such as her commitment offense, violated her rights to due process of the law.

***1. The Legal Standard for Denial of Parole***

"We analyze a due process claim in two steps. '[T]he first asks whether there exist a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.'" *Sass*, 461 F.3d at 1127. The United States Constitution does not, by itself, create a protected liberty interest in a parole date. *Jago v. Van Curen*, 454 U.S. 14, 17-21 (1981).

\\\

\\\

\\\

In briefs submitted to the Court, Respondent argues that Petitioner does not have a liberty interest in parole despite recognizing the existence of Ninth Circuit authority to the contrary. (Answer at 2). The Ninth Circuit has held that a prisoner possess a liberty interest in parole where mandatory language in a State's statutory scheme for parole creates a presumption "that parole release will be granted when or unless certain designated findings are made, and thereby give rise to a constitutional liberty interest.'" *McQuillion v. Duncan*, 306 F.3d 895, 901 (9th Cir. 2002) (quoting *Greenholtz v. Inmates of Nebraska Penal*, 442 U.S. 1, 12 (1979) in holding that California's parole scheme gives rise to a cognizable liberty interest in release on parole). California Penal Code section 3041 contains the requisite mandatory language, thus vesting California prisoners "whose sentence provide for the possibility of parole with a constitutionally protected liberty interest in the receipt of a parole release date, a liberty interest that is protected by the procedural safeguards of the Due Process Clause." *Irons*, 505 F.3d at 850; *see also McQuillion*, 306 F.3d at 903; *Biggs v. Terhune*, 334 F.3d 910, 914 (9th Cir. 2003). Consequently, the Court finds that Petitioner has a protected liberty interest in a parole date.

A finding that a liberty interest exists does not end the Court's inquiry as the Due Process Clause is not violated where the denial of a petitioner's liberty interests follows the State's observance of certain procedural safeguards. *See Greenholtz*, 442 U.S. at 12. Respondent contends that due process merely entitles Petitioner the right to be heard, advance notice of the hearing, and for the Board to state their reasons for denial. (Answer at 3). This contention is based on the argument that the "some evidence" standard does not constitute clearly established federal law and is not applicable to parole denials. (Id. at 6). Respondent is correct that a parole release determination is not subject to all of the due process protections of an adversarial proceeding. *Pedro v. Oregon Parole Board*, 825 F.2d 1396, 1398-99 (9th Cir. 1987). "[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a Petitioner in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists." *Id*. at 1399; *Jancsek v. Oregon Bd. of Parole*, 833 F.2d 1389, 1390 (9th Cir. 1987). Thus, an inmate is entitled to receive advance written notice of a hearing, be afforded an "opportunity to be heard" and told why "he[/she] falls short of qualifying for parole." *Greenholtz*, 442 U.S. at 16; *see also Pedro*, 825 F.2d at 1399.

Here, the Court notes that Petitioner does not allege that she was deprived of any of these procedural safeguards.

The Ninth Circuit has consistently recognized that a prisoner's due process rights are implicated where there is no evidence to support the denial of parole. *Irons*, 505 F.3d at 851; *see also Sass*, 461 F.3d at 1128-1129. "In *Superintendent, Mass. Correc. Inst. v. Hill* [472 U.S. 445 (1985)] the Supreme Court held that 'revocation of good time does not comport with 'the minimum requirements of procedural due process' unless the findings of the prison disciplinary board are supported by some evidence in the record.'" *Sass*, 461 F.3d at 1128 (citations omitted). The Ninth Circuit has further held that the same standard of "some evidence" that applies to the revocation of good time also extends to parole determinations and that this same standard of judicial review applies to habeas petitions regarding parole denials. *Irons*, 505 F.3d at 851; *Sass*, 461 F.3d at 1128-1129. This evidentiary standard prevents arbitrary deprivations of the prisoner's liberty interest without imposing undue administrative burdens or threatening institutional interests. *Hill*, 472 U.S. at 455. In light of the Ninth Circuit's reasoning, the Court finds that the "some evidence" standard is applicable to the denial of parole.

The inquiry of "whether a state parole board's suitability determination was supported by 'some evidence'" is framed by the California statutes and regulations governing parole suitability. *Irons*, 505 F.3d at 851; *see Briggs*, 334 F.3d at 915. California law provides that after an eligible life prisoner has served the minimum term of confinement required by statute, the Board "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for" the prisoner. Cal. Penal Code § 3041(b). "[I]f in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison," the prisoner must be found unsuitable and denied parole. Cal. Code Regs., tit. 15, § 2402(a); *see In re Dannenberg*, 34 Cal.4th at 1078, 1080. The Board decides whether a prisoner is too dangerous to be suitable for parole by applying factors set forth in the California Code of Regulations. *See* Cal. Code Regs., tit. 15, § 2402; *Irons*, 505 F.3d at 851-852; *Biggs*, 334 F.3d at 915-916. The regulations permit consideration of "all relevant, reliable

information available to the panel," and explicitly calls for consideration of "the base and other commitment offenses, including behavior before, during and after the crime." Cal. Code Regs., tit. 15, § 2402(b). Factors supporting a finding of unsuitability for parole include: the underlying offense was carried out in an "especially heinous, atrocious or cruel manner"; a record, prior to incarceration for the underlying offense, of violence; a history of unstable relationships with others; and serious misconduct while incarcerated. Cal. Code Regs., tit. 15, § 2402 (c); *see also In re Shaputis*, 44 Cal.4th 1241, 1257 n. 14 (Cal. 2008).

***2. State Court Decision***

After reviewing the record, the Court does not find that the Kern County Superior Court unreasonably applied the "some evidence" standard. *See* 28 U.S.C. § 2254(d)(1). The Superior Court found that the Board did not rely solely on immutable factors; rather, the Board relied on Petitioner's lack of insight into the crime as evidence of her unsuitability.

The California Supreme Court has recently held that denial of parole based solely on immutable factor may violate a petitioner's due process rights. *In re Lawrence*, 44 Cal.4th 1181, 1191 (Cal. 2008). The California Supreme Court found the petitioner in *Lawrence* had demonstrated "extraordinary rehabilitative efforts specifically tailored to address the circumstances that led to her criminality" including "*her insight into her past criminal behavior*, her expressions of remorse, her realistic parole plans, the support of her family, and numerous institutional reports justifying parole" which rendered "the unchanging factor of the gravity of petitioner's commitment offense" no longer probative of "her current threat to public safety." *Lawrence*, 44 Cal.4th at 1226 (emphasis added). However, the *Lawrence* court observed that a discipline-free record while incarcerated does not automatically render the commitment offense unpredictive of current dangerousness. *Id*. (citing *Lawrence*'s companion case, *In re Shaputis*, 44 Cal.4th 1241(Cal. 2008)). In *Shaputis*, 44 Cal.4th at 1259-1260, the California Supreme Court recognized that a lack of insight into the commitment offense can render the aggravating factors of the crime probative of a petitioner's current dangerousness despite an inmate's discipline-free record during incarceration.

\\\

\\\

Similarly, the Superior Court recognized that the Board's reliance on Petitioner's commitment offense did not violate her right to due process as"the Board did not solely rely on the immutable characteristics of the commitment offense but also delved into the inconsistencies in her testimony at present and prior parole hearings, her lack of current insight into the commitment offense, and the lack of exploration into intimate partner syndrome as a motive for the commitment offense." (Answer Ex. 3, Order on Petition for Writ of Habeas Corpus by Kern County Superior Court, at 2). The Superior Court's conclusion is supported by the record as the Board specifically stated that its primary concern in denying parole was Petitioner's lack of insight into the crime. (Pet. Ex. A at 90). Petitioner's continued insistence that the crime was an accident despite the fact that the victim was shot eight times demonstrates a lack of insight. Additionally, Petitioner's version of events differed from previous accounts she had given. (Id. at 92). Even the psychological report, which the Board noted supported a grant of parole, noted that a risk factor for likelihood of violent recidivism was "a moderate elevation concerning her lack of insight." (Id. at 44, 94). Petitioner's lack of insight and failure to accept responsibility, amply support in the record by her insistence that the shooting was accidental, combined with the psychological report, provides some evidence in support of the Board's conclusion that Petitioner remains dangerous and is unsuitable for parole. *Shaputis*, 44 Cal.4th at 1260. Lastly, the Court notes that the "some evidence standard is minimal, and assures that 'the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary.'" *Sass*, 461 F.3d at 1129 (quoting *Hill*, 472 U.S. at 457). Consequently, the Court agrees with the Kern County Superior Court that Petitioner's current lack of insight provides some evidence that she poses a current danger to the public safety; therefore, the Court recommends that Petitioner be denied relief on this claim.

***B. Vagueness Claim***

Petitioner claims that California regulations governing consideration of parole are unconstitutionally vague–more specifically, Petitioner challenges the Board's application of Title 15, California Code of Regulations, section 2402(c)(1) to her case. Generally, a regulation is void for vagueness "if it fails to give adequate notice to people of ordinary intelligence concerning the conduct it proscribes or if it invites arbitrary and discriminatory enforcement." *United States v.*

*Doremus*, 888 F.2d 630, 634 (9th Cir. 1989); *see also Maynard v. Cartwright*, 486 U.S. 356, 361 (1988) (finding that challenges to a regulation or statute's vagueness does not implicate First Amendment rights are analyzed on an as applied basis).

Consequently, the inquiry this Court undertakes is whether section 2402(c)(1) provided Petitioner with adequate notice and the state court with adequate guidance. Petitioner's citation to the numerous situations which may qualify as "especially heinous, atrocious, or cruel" is unavailing in light of the five factors the legislature explicitly mandated consideration of in section 2402(c)(1). As noted by several other district courts in this circuit, "because these sub-factors are set forth in simple plain words, such that a reasonable person of ordinary intelligence would understand their meaning and the conduct they proscribe, the notice requirement is satisfied." *Edwards v. Curry*, 2009 WL 1883739, *9 (N.D. Cal. 2009) (citing *United States v. Hogue*, 752 F.2d 1503, 1504 (9th Cir. 1985); *see also Wagoner v. Sisto*, 2009 WL 2712051, *6 (C.D. Cal. 2009) (stating, "the five sub-factors outlined in § 2402(c)(1)(A)-(E) serve to limit the 'heinous, atrocious or cruel' language of section 2402(c) and narrow the class of inmates that are found unsuitable for parole...thus, the terms are not unconstitutionally vague"); *Burnright v. Carey*, 2009 W: 2171079, *5 (E.D. Cal. 2009) (finding that after reading of California Penal Code § 3041(b) with Title 15 of the California Code of Regulations, sections 2402(c) and (d), a reasonable person of ordinary intelligence would understand, and therefore be on notice, regarding the standards for parole eligibility after ). Petitioner cites to no authority that would support her contention that California's regulations concerning parole suitability, and more specifically section 2402(c)(1), are unconstitutionally vague. Finding the reasoning offered by the other district courts persuasive, the Court recommends that Petitioner's claim be denied.

***C. Board's Failure to Adhere to Regulations Violates Separation of Powers***

Lastly, Petitioner claims that the it is the Court's duty to intervene as the Board has failed to enforce the legislature's statutes as intended. It is unclear if Petitioner is contending that the Board's actions violate the separation of powers doctrine under the federal or state constitution. A claim that it violates the federal constitution is not cognizable because the federal doctrine of separation of powers does not extend to the states under the Fourteenth Amendment. *See Hughes v. Superior*

*Court*, 339 U.S. 460, 467(1950). A claim that the Board violated the doctrine of separation of powers contained in the California state constitution does not give rise to a claim for federal habeas relief. *See Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985).

**RECOMMENDATION**

Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for Respondent.

This Findings and Recommendation is submitted to the Honorable Lawrence J. O' Neill, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within ten (10) *court* days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated: November 23, 2009** **/s/ John M. Dixon**
UNITED STATES MAGISTRATE JUDGE